

RECEIVED HHW
9-4-2008
SEP - 4 2008

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| KRAIG WILSON, | ) | Appellate Court, First Judicial |
| | ) | District, Case No. 1-06-2978 |
| Petitioner, | ) | No. 0528216. |
| | ) | |
| -vs- | ) | |
| | ) | Circuit Court, Cook County, Illinois |
| | ) | First Judicial Circuit, |
| | ) | Case No. 05-MC6 18671 |
| PEOPLE OF THE STATE OF ILLINOIS, | ) | The Honorable |
| | ) | Brian Flaherty, |
| Respondent, | ) | Judge Presiding |

## NOTICE OF FILING AND PROOF OF SERVICE

To:    Richard A Devine
       Cook County State's Attorney
       300 Daley Center
       Chicago, Illinois 60602

# 08CV5058
# JUDGE DER-YEGHIAYAN
# MAG.JUDGE COLE

You are hereby notified that on September 3, 2008, I submitted for filing 2 copies of the Petitioner's Petition for Leave to Appeal to the Office of the Clerk of the United States District Court for the Northern District of Illinois – Eastern Division, 200 East Capitol Avenue, Springfield, Illinois 62701, and 1 copies of the Petition to Richard A Devine, Cook County State's Attorney, 300 Daley Center, Chicago, Illinois 60602 by hand delivering same to UPS for delivery on this September 3, 2008, proper postage pre-paid, by 6:000 p.m. in Matteson, Illinois 60443 on this 3rd day of September 2008.

Kraig Wilson
394 West 17th Street
Chicago Heights, Illinois 60466
708-833-7787 or 351-6869

Sallie Spratt
9-3-08

"OFFICIAL SEAL"
SALLIE SPRATT
Notary Public, State of Illinois
My Commission Expires March 27, 2010

No. _____

_____

### IN THE

### SUPREME COURT OF THE UNITED STATES

_____

*KRAIG WILSON* — PETITIONER
(Your Name)

VS.

*PEOPLE OF THE STATE OF ILLINOIS* — RESPONDENT(S)

### PROOF OF SERVICE

I, *KRAIG WILSON*, do swear or declare that on this date, *SEPTEMBER 3rd*, 20 *08*, as required by Supreme Court Rule 29 I have served the enclosed MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS* and PETITION FOR A WRIT OF CERTIORARI on each party to the above proceeding or that party's counsel, and on every other person required to be served, by depositing an envelope containing the above documents in the United States mail properly addressed to each of them and with first-class postage prepaid, or by delivery to a third-party commercial carrier for delivery within 3 calendar days.

The names and addresses of those served are as follows:

*RICHARD A. DEVINE, COOK COUNTY STATE'S ATTORNEY 300 DALEY CENTER, CHICAGO, ILLINOIS 60602*

_____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on *Sept 3,* _____ , 2008

*Sallie Spratt*

*9-3-08*

*Kraig Wilson*
(Signature)

"OFFICIAL SEAL"
SALLIE SPRATT
Notary Public. State of Illinois
My Commission Expires March 27, 2010

## TABLE OF CONTENTS

OPINIONS BELOW.................................................................................. 1

JURISDICTION.................................................................................... 2

CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED ........................... 3

STATEMENT OF THE CASE ............................................................. 4-13

REASONS FOR GRANTING THE WRIT ............................................. 14-18

CONCLUSION.................................................................................. 19

## INDEX TO APPENDICES

APPENDIX A  DECISION OF STATE COURT OF APPEALS DENYING REHEARING

APPENDIX B  DECISION OF STATE COURT OF APPEALS

APPENDIX C  DECISION OF STATE TRIAL COURT

APPENDIX D  DECISION OF STATE SUPREME COURT DENYING REVIEW

APPENDIX E  DECISION OF UNITED STATES SUPREME COURT

APPENDIX F

OTHER documents enclosed at the beginning (front) of other documents are
(1)  1 Page for cover page
(2)  1 Page for motion For Leave to Proceed in Forma Pauperis
(3)  1 Page for List of Parties
(4)  5 Pages for Affidavit or Declaration in support of motion to Proceed in Forma Pauperis
(5)  1 Page Question (S) Presented
(6)  1 Page for Table of Authorities Cited
(7)  1 Page for Proof of Service (unattached)

No. _____

_____

IN THE

SUPREME COURT OF THE UNITED STATES

_____

*KRAIG WILSON* — PETITIONER

(Your Name)

*PEOPLE OF THE* VS.
*STATE OF ILLINOIS* — RESPONDENT(S)

ON PETITION FOR A WRIT OF CERTIORARI TO

*APPELLATE COURT OF ILLINOIS* *FIRST JUDICIAL DISTRICT*

(NAME OF COURT THAT LAST RULED ON MERITS OF YOUR CASE)

PETITION FOR WRIT OF CERTIORARI

*KRAIG WILSON*

(Your Name)

*394 WEST 17ᵈ STREET*

(Address)

*CHICAGO HEIGHTS, ILLINOIS*

(City, State, Zip Code)

*708-833-7787 or 351-6869*

(Phone Number)

**LIST OF PARTIES**

[X] All parties appear in the caption of the case on the cover page.

[ ] All parties **do not** appear in the caption of the case on the cover page.   A list of
all parties to the proceeding in the court whose judgment is the subject of this
petition is as follows:

RICHARD A. DEVINE
COOK COUNTY STATES ATTORNEY
300 DALEY CENTER
CHICAGO, ILLINOIS 60602

## QUESTION(S) PRESENTED

1. Should a crime be reported and documented when it happens.

2. Should a man be convicted of a crime, in which he didn't commit.

3. Should the State convict a man of a crime where there are absolutely no evidence, no witnesses, based on allegations reported to the police some 4-5 months later.

4. After an alleged crime has been committed, should not the State produce some type of clear and convincing evidence, by means of collected evidence thru their investigation, establishing at least some type of supporting evidence to establish a case of guilty.

5. Should my Attorney be given the opportunity to properly defend his client on the day of trial.

6. If you Attorney explain to the Judge that he is not ready for trial and request a continuance for another trial date, should the Judge grant that request in the interest of justice and fairness.

7. Can an alleged victim be considered a creditable witness when their testimony change from the time of reporting it 4-5 months after the alleged crime took place and the day of trial.

8. Should the Judge have continued the trial to allow the victim/or the alleged suspect the opportunity to establish supporting evidence, and/or witness to be able to come forward.

9. Should not all citizens of this Country (US) be convicted only on evidence establishing facts presented at trial in a court of law.

10. When there exist absolutely no evidence to support anyone's claim of a crime, can they receive justice and fairness by appealing to one of the Highest Court of Illinois.

# TABLE OF AUTHORITIES CITED

| CASES | Trial Court Case | PAGE NUMBER |
|---|---|---|
| 1. People vs. Nunez | Transcript from Trail Court | Page F4 |
| 2. In Re Riaz B. (ph) | " | F14 |
| | Appeal to Ill Court | |
| 3. In re Winship, 397 U.S. 358, 364 (1970) | | Page 8 |
| 4. Jackson v. Virginia, 443 U.S. 307, 315 (1979) | | 9 |
| 5. People v. Smith, 185 Ill.2d 532, 541, 708 N.E.2d 365 (1999) | | 9 |
| 6. People v. Campbell, 146 Ill.2d 363, 375, 586 N.E.2d 1261 (1992) | | |
| 7. People v. Cunningham, 212 Ill.2d 274, 280, 818,N.E. 2d 304 (2004) | | |
| 8. People v Mitchell, 366 Ill. App. 3d 1044, 1051, 853 N.E.2d 900 (1[st] Dist 2006) | | |
| 9. Id.; People v Taylor, 186 Ill.2d 439, 445, 712, N.E.2d 326 (1999) | | |
| 10. People v Arcos, 282 Ill. App. 3d 870, 872, 668 N.E.2d 1177 (1[st] Dist 1996) | | |
| 11. Cf. People v Carlson.278 Ill. App. 3d 515, 663 N.E.2d 32 (1[st] Dist 1996) | | |

STATUTES AND RULES

OTHER

IN THE

SUPREME COURT OF THE UNITED STATES

PETITION FOR WRIT OF CERTIORARI

Petitioner respectfully prays that a writ of certiorari issue to review the judgment below.

**OPINIONS BELOW**

[ ] For cases from **federal courts**:

The opinion of the United States court of appeals appears at Appendix _____ to the petition and is

[ ] reported at _____; or,
[ ] has been designated for publication but is not yet reported; or,
[ ] is unpublished.

The opinion of the United States district court appears at Appendix _____ to the petition and is

[ ] reported at _____; or,
[ ] has been designated for publication but is not yet reported; or,
[ ] is unpublished.

☒ For cases from **state courts**:

The opinion of the highest state court to review the merits appears at Appendix _B___ to the petition and is

[ ] reported at _____; or,
[ ] has been designated for publication but is not yet reported; or,
☒ is unpublished.

The opinion of the _STATE TRIAL_____ court appears at Appendix _C__ to the petition and is

[ ] reported at _____; or,
[ ] has been designated for publication but is not yet reported; or,
☒ is unpublished.

1.

## JURISDICTION

[ ] For cases from **federal courts**:

    The date on which the United States Court of Appeals decided my case was _____.

    [ ] No petition for rehearing was timely filed in my case.

    [ ] A timely petition for rehearing was denied by the United States Court of Appeals on the following date: _____, and a copy of the order denying rehearing appears at Appendix _____.

    [ ] An extension of time to file the petition for a writ of certiorari was granted to and including _____ (date) on _____ (date) in Application No. ___ A _____.

    The jurisdiction of this Court is invoked under 28 U. S. C. § 1254(1).

[X] For cases from **state courts**:

    The date on which the highest state court decided my case was *4 - 29 - 08*. A copy of that decision appears at Appendix *D* .

    [ ] A timely petition for rehearing was thereafter denied on the following date: *No REHEARING REQ.UESTED* and a copy of the order denying rehearing appears at Appendix _____.

    [ ] An extension of time to file the petition for a writ of certiorari was granted to and including _____ (date) on _____ (date) in Application No. ___ A _____.

    The jurisdiction of this Court is invoked under 28 U. S. C. § 1257(a).

ORDER
_____

IN THE APPELLATE COURT, STATE OF ILLINOIS
FIRST DISTRICT

PEOPLE OF THE STATE OF ILLINOIS,       )
     Plaintiff-Appellee,       )
                        )
         V.       )       NO. 06-2978
                        )
KRAIG WILSON,       )
     Defendant-Appellant.       )

ORDER

     On the Court's own motion, the Defendant-Appellant having submitted a Petition for Rehearing;

     **IT IS ORDERED** that because the time for requesting the Court to reconsider its decision expired on 2/7/08, pursuant to the Illinois Supreme Court's decisions in <u>People v. Lyles</u>, 217 Ill. 2d 210 (2005) and <u>Woodson v. The Chicago Board of Education</u>, 154 Ill. 2d 391 (1993), this Court lacks jurisdiction to consider the Petition for Rehearing. Accordingly, the Petition for Rehearing is not considered.

## ORDER ENTERED

### FEB 2 2 2008

#### APPELLATE COURT, FIRST DISTRICT

Name  Kraig Wilson

**Attorney for**

**Address**  2838 Western Ave.
             Park Forest, IL 60466

**Telephone**

     _____
     Justice

     _____
     Justice

     _____
     Justice

STEVEN M. RAVID, CLERK OF THE APPELLATE COURT, FIRST DISTRICT

_APPENDIX A_

IN THE CIRCUIT COURT OF COOK COUNTY

CRIMINAL DIVISION

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | IND./INF. No. 05 MC6 018671 |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | Trial Judge: Brian Flaherty |
| -vs- | ) | |
| | ) | Trial Atty: Lex Johnson |
| KRAIG WILSON, | ) | |
| | ) | Type of Trial: Bench |
| Defendant-Appellant. | | |

## AMENDED NOTICE OF APPEAL

An appeal is taken to the Appellate Court, First District:

Appellant(s) Name:          Kraig Wilson

Appellant's Address:        394 W. 17th St.
                            Chicago Heights, IL 60411

Appellant(s) Attorney:      Office of the State Appellate Defender

Address:                    203 North LaSalle Street - 24th Floor
                            Chicago, Illinois 60601

Offense of which convicted: Sexual exploitation of a child

Date of Judgment or Order:  August 30, 2006

Sentence:                   18 months conditional discharge

If appeal is not from a conviction, nature of order appealed:

_Michael J. Pelletier_

MICHAEL J. PELLETIER
Deputy Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois  60601
(312) 814-5472
COUNSEL FOR DEFENDANT-APPELLANT

*APPENDIX  C*

C-5

NOTICE
This text of this order may be
changed or corrected prior to the
time for filing of a Petition for
Rehearing or the disposition of
the same.

FOURTH DIVISION
January 17, 2008

No. 1-06-2978

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 05 MC6 18671 |
| | ) | |
| KRAIG WILSON, | ) | Honorable |
| | ) | Brian K. Flaherty, |
| Defendant-Appellant. | ) | Judge Presiding. |

## O R D E R

Following a bench trial in the circuit court of Cook County, defendant, Kraig Wilson, was found guilty of attempted sexual exploitation of a child and sentenced to 18 months' conditional discharge. On appeal, defendant contests the sufficiency of the evidence to sustain his conviction.

The record shows that the trial court found nine-year-old victim, Jessica H., competent to testify. Jessica H. related the events which occurred in the Sauk Village, Illinois, home of her mother's best friend, Tracy Hallmark, that led to the charges in this case. Jessica testified that Hallmark often baby-sat for her and her two brothers in that home which Hallmark shared with her boyfriend, the defendant, and her six-year-old son, Jordan.

Jessica specifically recalled spending one night in that house in June 2005. She testified that she slept in one bedroom

APPENDIX B

1-06-2978

with Hallmark and her son, and defendant slept in a separate
bedroom by himself. Jessica went to the kitchen in the early
morning hours to get a drink of water, and on her return to the
bedroom, she passed the open door of the room occupied by
defendant. As she passed, defendant asked her to come in and
take off her clothes. Jessica entered the room, but did not
verbally respond to his request because she thought he was
joking. Defendant then made a "V" shape with his index and
middle fingers over his mouth and moved his tongue, saying "[i]t
feels good." Jessica said "no," and defendant replied, "[d]on't
tell." Jessica claimed that defendant also told her that he "did
it" to Hallmark's niece, Danielle. After defendant repeated his
request that she remove her clothes three more times, Jessica
left the room, returned to bed, and went back to sleep. Jessica
further testified that the encounter lasted three minutes, and,
that at the time, she was wearing pajamas consisting of pants and
a shirt.

   Jessica acknowledged that she waited four months to tell
anyone about the incident, but explained that she did not tell
her mother because she was scared that she "was going to hurt
her," and that she did not tell Hallmark because she did not
think anyone would believe her. Jessica told a school counselor
in October 2005 because, she claimed, "it needed to be said."

   Jessica also claimed that she never returned to defendant's
residence after the incident. She originally stated on cross-

-2-

1-06-2978

examination that she did not return there because her mother did not want her to, but was reminded that she did not tell her mother until October 2005, four months after the incident. Jessica then explained that she did not return prior to the date she told her mother because she did not want to.

Defendant testified in his own defense, essentially denying the allegations made by Jessica. When he was informed of Jessica's allegations many months after her last visit to his home, he was confused by them. When defendant met with Sauk Village Detective Robert Grossman, who was investigating the allegations, he denied that he asked Jessica to come into his room and remove her clothes or that he made any gestures with his fingers and tongue. He also testified that Jessica did return to his home after the last time she spent the night.

Defendant also called Detective Grossman to testify in his defense. Grossman testified that he witnessed, through a one-way mirror, a victim sensitivity interview of Jessica conducted by Dr. Myra West at La Rabida Children's Outreach Center on November 5, 2005. He testified that Jessica claimed then that defendant entered the room in which she was sleeping and requested that she follow him to another room. She told the doctor that she did so and that defendant then asked her to take off her clothes, looked at her genital area and made a licking motion with his tongue. Jessica also told West that she was wearing a t-shirt and shorts at the time.

-7-

After considering the testimony of Jessica, defendant, and Detective Grossman, the trial court found defendant guilty of attempted sexual exploitation of a minor. In doing so, the court considered Jessica's age, her late outcry, and the fact that she could not remember the exact date of the incident or the address of the house in which it occurred. The court, nevertheless, found that "the complaining witness testified very credibly."

Defendant now challenges this ruling on appeal. He specifically claims that he was not proved guilty beyond a reasonable doubt because Jessica's credibility was impeached and her testimony was uncorroborated.

When faced with a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution, and determine whether any rational trier of fact could have found the elements of the offense proved beyond a reasonable doubt. People v. Campbell, 146 Ill. 2d 363, 374 (1992). This standard recognizes the responsibility of the trier of fact to resolve conflicts in the evidence and witness credibility. Campbell, 146 Ill. 2d at 375. This court will not substitute its judgment on these matters unless the proof is so unsatisfactory that a reasonable doubt of guilt appears. People v. Berland, 74 Ill. 2d 286, 305-06 (1978).

Here, defendant was convicted of attempted sexual exploitation of a child. To sustain that conviction, the State was required to present evidence establishing that defendant

-4-

1-06-2978

knowingly attempted to entice, coerce, or persuade Jessica to
remove her clothing for the purpose of the sexual arousal or
gratification of himself or the child, or both, and committed an
act which constituted a substantial step toward the commission of
that offense.   720 ILCS 5/8-4(a) (West 2004); 720 ILCS 5/11-
9.1(a-5) (West 2004).

    Viewed in the light most favorable to the prosecution, the
evidence presented by the State at trial showed that while the
other household members were asleep, defendant called Jessica
into his room and asked her to remove her clothes four times.  He
also made a "V" shape with his index and middle fingers over his
mouth and moved his tongue, telling her that "[i]t feels good."
Jessica rejected his overtures and he then told her that he had
done the same thing to Hallmark's niece.  Based on this evidence,
the trial court could reasonably infer that defendant knowingly
attempted to entice Jessica to remove her clothes for his or her
sexual arousal or gratification, and was therefore proved guilty
of attempted sexual exploitation of a child beyond a reasonable
doubt.  See In re Donald R., 343 Ill. App. 3d 237, 243 (2003)
(evidence sufficient to sustain defendant's conviction for sexual
exploitation of child as proscribed by section 11-9.1(a)(2) (720
ILCS 5/11-9.1(a)(2) (West 2004)).

    Notwithstanding, defendant points out that Jessica was the
only witness who testified for the State, and contends that her
uncorroborated testimony was insufficient to establish that

-5-

1-06-2978

anything occurred between them.  Defendant maintains that
Jessica's testimony was undermined by the prior inconsistent
statements she made during the course of her victim sensitivity
interview with Dr. West concerning the initiation of the
encounter and what she was wearing at the time.  Defendant
further maintains that Jessica's credibility was impeached by the
four-month delay between the incident and her report of it to
anyone, and her false testimony that she never returned to his
home after the incident.

    We observe initially, that the positive testimony of a
single credible witness may be sufficient to support a criminal
conviction, (People v. Smith, 185 Ill. 2d 532, 541 (1999)), and
that this court will not overturn a conviction merely because the
evidence is contradictory (Berland, 74 Ill. 2d at 306).  In
finding defendant guilty in this case, the trial court noted the
discrepancies and perceived shortcomings in Jessica's testimony,
as raised by defendant, but concluded that Jessica testified
"very credibly."  We find no reason to disturb that
determination.  Berland, 74 Ill. 2d at 306.

    Although Jessica testified at trial that defendant asked her
to come into his room as she returned from the kitchen, she
stated in her victim sensitivity interview that defendant came
into the room in which she was sleeping, thus, her account of
defendant's attempted sexual exploitation of her remained
consistent.  In both settings, Jessica testified clearly about

-6-

1-06-2978

her encounter with defendant that night when he repeatedly asked her to take off her clothes and suggestively moved his tongue. This consistent testimony, which was accepted by the trial court, was sufficient to establish defendant's guilt of the charged offense.  People v. Doll, 371 Ill. App. 3d 1131, 1137 (2007).

We have also considered the other matters raised by defendant, but find they are collateral in nature and they do not diminish Jessica's testimony regarding the offense at bar.  Doll, 371 Ill. App. 3d at 1136-37.  The trial court was not expected to accept defendant's exculpatory testimony over that of the State's witness, and its resolution of the conflicting testimony against defendant provides no basis for us to disturb the conclusion that defendant was found guilty beyond a reasonable doubt.  Berland, 74 Ill. 2d at 306; Doll, 371 Ill. App. 3d at 1138.

Accordingly, we affirm the judgment of the circuit court of Cook County.

Affirmed

O'BRIEN, J., with NEVILLE, P.J., and MURPHY, J., concurring.



### SUPREME COURT OF ILLINOIS

SUPREME COURT BUILDING
SPRINGFIELD 62701

**JULEANN HORNYAK**
CLERK OF THE COURT
(217) 782-2035

TELECOMMUNICATIONS DEVICE
FOR THE DEAF
(217) 524-8132

**FIRST DISTRICT OFFICE**
20TH FLOOR
160 N. LASALLE ST.
CHICAGO 60601
(312) 793-1332

TELECOMMUNICATIONS DEVICE
FOR THE DEAF
(312) 793-6185

April 29, 2008

Mr. Kraig Wilson
394 West 17th Street
Chicago Heights, IL 60466

> In re: People State of Illinois, respondent, v. Kraig
> Wilson, petitioner.
> No.106388 (1-06-2978)

Today the following order was entered in the captioned case:

> Motion by petitioner, pro se, for an extension of time to file
> petition for leave to appeal is treated as a motion to file
> petition for leave to appeal instanter. Motion Denied.

Order entered by Justice Fitzgerald.

Very truly yours,

*Juleann Hornyak*

Clerk of the Supreme Court

cc: Appellate Court
    First District

    Hon. Lisa Madigan
    Hon. Richard A. Devine

APPENDIX  D

# SUPREME COURT OF THE UNITED STATES
## OFFICE OF THE CLERK
## WASHINGTON, DC  20543-0001

August 4, 2008

Kraig Wilson
394 West 17th Street
Chicago Heights, IL 60411

    RE: Wilson v. IL

Dear Mr. Wilson:

The above-entitled petition for a writ of certiorari was postmarked July 29, 2008 and received August 4, 2008.  The papers are returned for the following reason(s):

    Your case must first be reviewed by a United States court of appeals or by the highest state court in which a decision could be had. 28 USC 1254 and 1257.

    The order from the Supreme Court of Illinois does not appear to be an order denying discretionary review of the decision by the Illinois Court of Appeals.

                        Sincerely,
                        William K. Suter, Clerk
                        By:

                        Erik Fossum
                        (202) 479-3392

Enclosures

*APPENDIX  E*

## CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

The Illinois Constitution, Bill of Rights, Article 1, Section 2, Gives us the right to Due Process and Equal Protection under the Laws of Illinois. There was no proper Due Process in this trial, and no Equal Protection when the Judge did not allow my Attorney a continuance of this case until another date in order to be properly prepared. Witnesses and evidence was not introduced.

The Federal United States Constitution also allow the same protection under the laws of the Federal Government. The Fourteenth Amendment of our Constitution requires that a man should receive Due Process and Equal Protection, that allow facts to be presented by clear and convincing in order to take away a man freedom or life.

## STATEMENT OF THE CASE

### State of Facts From Trial Court Transcript

1. Attorney Johnson asked for a competency hearing regarding 9 year old Jessica because of her age, and he thought it was in my best interest to do so. P. C4, Line19-24.

2. Jessica was asked by the States Attorney, if she remember the month she spent the night at Aunt Tracy's first she said No and then she said Yes, around June. P. C9, Line 9-11.

3. Jessica was asked. did her mom drop her off, late at night or in the afternoon, she replied, I don't remember. P. C10 Line 12-14.

4. Jessica could not remember the time she got up for some water, but could remember where in the room Tracy and Jordan were sleeping. P C12.

5. When asked if she got in the middle of the night and why, she said to get some water but could not tell them what time it was. P C12.

6. P 13 Jessica stated that she went to the kitchen for water down the hallway pass pass Jordan's room where I was sleeping and watching TV. P 14 she stated I asked her to come in to the bedroom, and to take off her clothes, and the light was on, but she could not tell you what I was wearing. P C15 Jessica reply to the State's question that I made a gestures and signs with my finger, lips, and mouth. P C16 Jessica stated that I said it would feel good and her reply was no, and that I said Don't tell.

7. P. C16 the State also asked Jessica, did he tell you that he did that to anyone else and what else did I tell her. Jessica's reply was that I did it to Danielle. P C17 Danielle is

my girlfriend Tracy's niece. Jessica also said that she went back to bed and told no one, not even her Mom because she was scared she would hurt her. P C18-C19 says it

happened in June about 2 days after school was out but could not remember what day of the week it was, just it was in June of 2005, and that her mom needed someone to watch them for the summer.

8.   P. C21 Line 20-21, Attorney Johnson asked Jessica how many times did she go back to Tracy's house after the incident, she stated none. Attorney Johnson ask why not, Jessica said it was because her mom did not want her to. P. C22, Line 1-5, Attorney Johnson stated, but you hadn't told her about it. Jessica said I told her in October and after I told her I didn't go back over there. Every time I was offered to go back before I didn't tell my mom, I didn't want to.

9.   Attorney Johnson asked Jessica before you told you mom, you went back over there, Jessica stated, no.

10.  P C26, thru P C27 Jessica explained after questioning that she went to the kitchen to get some water to drank and on returning, she said I said come here, she also stated that she was wearing pajamas, which was pants and shirt. She was asked on P C27 also did she remember what I was wearing, her reply was no. She alleged that once she was in the room I told her to come here. P C28 she alleged that I also told her to take off her clothes and her reply was no, in Line 9-24 she stated that she thought it was a

*joke,* so she did not say anything. Jessica stated that she was in the room three minutes, P C29 Line 1. P C29 Jessica stated after that she went back to Aunt Tracy's room and went to sleep.

11. P C29 Line 13-14 Jessica was asked, you indicated this made you *scared,* correct, her reply was yes. P C30 Line 2-10 Jessica stated she told the counselor where she went to school in October.

12. P C30 acknowledge after the State asked at some point she no longer thought it was a joke after I supposedly kept saying take off your clothes.

13. P C31, Line 1-2 My Attorney Johnson asked her how many times I told her to take off her clothes, she said 4 times. P C31 Jessica said after she told her mom, she cried, and later they gave a report to a female police officer.

14. P C32 Line 2-5 Attorney Johnson asked Jessica, when you talked to the police officer at the police station do you remember telling the police officer that the defendant came into the room with you and Tracy?

15. P C53 Line 5-24 Attorney Johnson asked Detective Grossman to relate what took place during his interview with Jessica, he stated that she said that she was called into the room by the defendant and I don't remember, specifically, what she said. I would have to again review my report.

16. P C54, Line 1-C55, Line 24, Detective Grossman stated after reviewing his VSI report that while spending the night at my residence: that I came

6

into the room and requested her, Jessica to accompany me, Kraig to
another room.  Attorney again asked, I'm asking, specifically, she
indicated the defendant came into her room where she was sleeping?
Detective Grossman, reply was, that is what she indicated in the victim
report.  Attorney Johnson again asked, if he, defendant came into the room
where she was sleeping and asked her to accompany him to another room.
Attorney Johnson asked if she, Jessica complied, Detective reply was yes.
Next, he asked her to take off her clothes and look at her genital area and
made a licking motion with his tongue.  Detective Grossman stated after
again reviewing the VSI report she stated she was wearing a T-shirt and
shorts, next he stated she was wearing a gray T-shirt and black pants.

17.    P C58, Attorney Johnson asked Detective Grossman did he follow-up with
a call to this, alleged, additional victim?  He said he spoke to an additional
victim, to the other girl mentioned and her mother.  Attorney Johnson
asked what was the result of that investigation, and did he file any
additional charges on my client based on that investigation and
Detective stated no.

18.    P C59, in conclusion Attorney Johnson argued that the State did not reach
its burden beyond a reasonable doubt.  There is no testimony or evidence
put on to prove guilty.  P C60 Line 11-17 Attorney Johnson stated that
there is no corroborating evidence in this case, although it does not take
any corroborating witnesses in order to get a conviction.  That also has to

7

be taken into accout when the State reaches it's burden.P C61, Line 18-24

nobody else has testified. Detective Grossman testify that Jessica

Hawkins told him and told the doctor in the case my client came into her

room and asked her to come outand come into his room. That is a direct

contradiction to the way she testified here in court. She says she was

getting a drink of water, then heasked her to come into the room. P C62

Line 1-7. Your Honor this discrepancy cannot be disregarded. These are

two separate version of the facts. Whether or not she was getting a drink

of water or whether or not he came into the room and asked her to come

out. Based upon that, your Honor, the State has not reached its burden

and we ask you to find the defendant not guilty.

19    On June 12, 2006, See Court Transcript, Attorney Johnson asked the Court

for a new trial based on the fact that the State failed to prove discrepancy

that was cited in trial and did not meet their burden is against the manifest

weight of the evidence, your Honor, P F3. Line 19-24, continuing on P F4,

On appeal in these types of cases the reviewing Courts are charged to

carefully examine the evidence that is presented at trial. The Court has a

duty to reverse the judgment if the evidence is not sufficient to remove all

reasonable doubt and accordingly, the defendant charged, denied the

charge of attempt sexual exploitation. As in this case the conviction can

only be upheld if there is some form of corroboration of the testimony or

if the testimony is clear and convincing, consistent or not consistent.

8

Cited case People vs Nunez was reversed by the Supreme Court even the girl had a witness, the girl's testimony was not sufficient to remove all reasonable doubt as to the defendant't guilt. The girls testified incorrect date the incident happened. The Court also noticed contradiction in their testimony. Your Honor my clients case is similar, where Jessica testify that on a certain day in which she couldn't tell the date or time, the date of the week of the month, P F5, Line 1-24. P F7 there is conflict as to what she was wearing, the number of times she went to Aunt Tracy's in the summer because her mother wanted a place for her to go during the summer, that was the fourth inconsistency. P F8, fifth inconsistency, she said she didn't go back because she did not want to, next after reminding her that she did not go back because her mother did not want her to, and again she told her mother in Oct and at that time she did not want to go back. Different stories creates doubt as to the victim's credibility, and whether her testimony is clear and convincing. P F9 is it reasonable that Mr Wilson, went into a room where Tracy and her son was sleeping and go around them to get to the victim, wake her us and tell her to come into the room. Is it not reasonable Your Honor that the victim told one story and then another story …to the unreasonableness of the first story. Jessica told one story to the Detective and police officer and another at the time of trial.

P F10, Jessica stated she was extremely scared, but went back to Tracy's

9

room and went to sleep, she did not tell Tracy non her mom. Could not give date incident supposedly happened. PF11 Lastly, with regard to reasonable Jessica would wait 5 months to tell anybody what happened. In this case she told the school counselor, no evidence put on why she was talking to a counselor in the first place. No evidence of what type..what she said exactly, when she talked to the counselor. Your Honor, as in Newman 4-5 months she waited to make an outcry about this speaks to a validity of whether or not this incident happened. P F12, you have a *single witness testified that somebody said something to me and the fact of what that person said constitutes a crime.* Jessica did not know the date it happened. Her ability to remember this date goes towards our ability to defend. How do we know what date it was. He could have been somewhere else on the date she testified to. But she didn't testify to anything, your Honor. Its two wildly different versions of the story, we don't know if she dreamed this when waking up. Also we have to look to a major inconsistency. She testified saying mom didn't want me to go back. Oh no, I didn't want to go back.

P F13, With an analogy. It would be just as easy as myself saying this State's Attorney threatened to kill me back in January, I didn't report it. I don't know what date it was. And nobody saw it but I want you to find him guilty of assault cause he threatened to kill me. How do you defend a case like this when the victim says back in Oct, or back in June and she

reports it in Oct, the trial is in April, months ago this defendant came in and told me to take off my clothes. I didn't tell anybody. Nobody saw it. There is no corroboration. Defend yourself. Your Honor, there, the state did not prove it's case beyond a reasonable doubt, no evidence put on, no corroboration. The counselor she supposedly talked to wasn't even present. Doctor West wasn't present, no witnesses of the alleged act and the State didn't even cal the detective that investigated the incident. I had to call him and his testimony was used to impeach Jessica's testimony in this case. P F14, a defendant going about his life and all of a sudden gets arrested and we don't know what date it happened. What you said constitutes a crime and the State failed to prove any of those elements of the crime your Honor. In Re Riaz B. (ph) in reversing the defendant's conviction the court's have held that in order to be guilty of a crime of sexual exploitation it has to be some coercion and type of persuading which is to restrain, or control, or dominate nullifying the individual ill or desire as by force, power, intimidation. In the case of Riaz B he testified that the court held the defendant asking the victim to show him her nipples and she showed it to him, the court held that he did not entice, persuade or coerce.

20.  In this case the defendant, I Kraig is charged with attempt exploitation of a minor. In order to be guilty of that he has to coerce, persuade and entice this minor to take off her clothes. The act has to be complete by taking off the cloths for sexual exploitation. An attempt is doing the coercing and

11

persuading and the enticing without the actual taking off the clothes.  In this case the victim testified he said take off your clothes, she said no.  He said, take off your clothes, she said no.  She then went back to her room.  *The case law is clear in this case even if you take what the victim said, whichever story you want to believe, even if you take what the complaining witness said as fact it still does not amount to attempt sexual exploitation of a child and case law is clear on that.  P F15-16.*

21.    *Lastly, we would argue with respect to the court's wisdom we would argue that the defendant's motion for continuance should have been granted.  When I presented the oral motion to continue I dedicated to your Honor it was because of the defendant's recognition of a new witness Your Honor replied that the court has a policy of when a complaining witness is here that there will be no continuance.*

22.    *Your Honor, respectfully, there has to be some balance here.  The first time the matter was up for trial the defendant recognized the new witness who would have testified in this case and in the interest of the Justice there were no previous continuances asked for by the defense.  In the interest of the justice we say that the defendant's motion to continuance should have been granted, your Honor.  Given all these issues, the inconsistencies in the complaining witness' testimony and also the failure of the State to prove every element of the case and the defendant's denial of the continuance we ask you to grant our motion for new trial.  P F16-17.*

**Transcript of August 3, 2006 Court Date**

Court reviewed my pass record of 1988 with 2 residential burglaries,
sentencing was 80 days imprisonment, time served on week-ends when
school was out.  The Judge gave the option to do 80 days straight, week-
ends or during the summer when school was out altogether.  I choose, the
80 days on week-ends.  My residential burglary in 1997 was when I was
moving out of an apartment and someone was moving before I removed
all of my property, I was sentences to 4 years but the Judge gave
the option of doing 5 months in boot camp and my 4 years would be
completed if I successfully completed boot camp and that I did.

## REASONS FOR GRANTING THE PETITION

This is a case where the Justice System swung the scales of justice to far to the left, misapplied the law, in which a man can be found guilty of a crime in where there existed absolutely no evidence whatsoever to support the alleged victim allegations, nor were there any other witnesses, no recordings, no tapes introduced in the trial court of law to establish that any conversation ever took place between Jessica and me.

As an interest of the public, we as a society of all mankind in these United States of America should be outraged that any person in any court of law should be treated as such to take away ones freedom with cause and clear and convincing evidence. Being one of the Highest Law of the Land, The Supreme Court of the United States requires before they can hear this case, a discretionary review must be done by either this court or the Illinois Supreme Court of Ill. Since the Illinois Supreme Court of Illinois denied me my constitutional rights, I make a final plea before the United States Courts of Appeals, Northern District of Illinois and pray that you do not allow this injustice to continue without redress.

This ugly crime of labeling me falsely with attempted sexual exploitation of a child is a horrible crime to be label with without any evidence that such an act took place in the first place. When the Illinois Court of Appeal upheld this crime without evidence, is a neglect of their duty to uphold the law, and as such allowed a terrible label of such crime

14

to have an unwarranted impact upon my life, although may not be much in their eyes, but as well as my family.

The State did not prove that I was guilty beyond a reasonable doubt where J Hawkins was the State's only witness, where she changed her version of events, was impeached, and no one and nothing corroborated her testimony. The State was not able to produce any evidence nor anyone to prove or establish that I was guilty of attempt sexual exploitation of a child. The United States Constitution protects our Due Process, requiring that a person must be found guilty beyond a reasonable doubt in order to sustain a conviction of guilty. In re Winship 1970 Supreme Court agrees and for the first time explicitly held that the Due Process Clause of the United States Constitution "protects the accused against conviction except upon proof of facts necessary to constitute the crime with which he is charged. Jessica H. first allegation came about 5 months after she alleged that such an act took place. Her statement to the Sauk Village Police Dept was that I, Kraig came into the room where Tracy, my son Jordan and she were sleeping. and that I had a conversation with her to come with me to another room and after repeatedly asking her to do so, she said no because it was wrong. During the trial of 2006 she changed her statement entirely, stating that she went for a drink of water in the middle of the night about 1 or 2 o'clock, that I asked her to come in to the room where I was watching

15

TV and after repeatedly asking her to take off her clothes and I did

gestures with my mouth, tongue and fingers and said it would be fun and

I did the same thing to Danielle, Tracy's niece. All statements made by

Jessica, at the Police Station and in Court was false.

The Trial Court decided without any evidence and without any witnesses,

and with Jessica Hawkins testimony along was enough to convict me, for

that reason along is way the Illinois Supreme Court is required to grant an

outright reversal of this injustice in the name of justice itself. It is the

conflicting statement that Jessica made which is impeach, she was

the only witness who testified for the State. Her testimony was insuffi-

cient to establish that anything occurred between Jessica and me, Kraig.

Detective Grossman called by the defense not by the State, testified for

the defense that he watched the Victim Sensitivity Interview at LaRabida

Children's Outreach Center through a one-way mirror and Jessica told

Dr West, the I, Kraig came into the room where she was sleeping with 2

others. In court her testimony was in direct opposition of what she said

on her original statement, now in court she says she went for water in the

middle of the night and on her way back to the room where she was sleep-

ing I told her to come in to the room where I was watching TV and told

her to take off her clothes and made sexual gestures.   No evidence was

presented at trial, nor were there anyone to corroborate what Jessica had

stated in either case, at the Police nor in Court about a year after her initial

16

statement. Jessica testified that I, Kraig told her that I did it to Danielle,

while Detective Grossman testified that during his interview with Danielle

and her mother, Danielle said I had never did nor said anything like that to

her at any time. After Detective Grossman interview with Danielle and

her mother, no charges were brought based on those conversations. (R 75)

Clearly those allegations that I did anything with Danielle were false.

Jessica attire was also impeached, at trial she said she was wearing pants

the night in question and short when interview by Dr West. I testified that

no such thing ever happened with Jessica, not was Jessica scared to return

to the resident where I lived with my girlfriend Tracy. When I was

bonded out by my family, Tracy was with them and she spoke with

Detective Grossman and told him that it would have been impossible for

anyone to enter or leave the room where they were sleeping because the

bedroom door was warped and when you opened it, it would make a loud

pop, so if I entered the room or if Jessica left the room she would have

heard it.

See court transcript dated June 12, 2006, P F16, Line 2-10 Attorney

Johnson argued with respect to the court's wisdom we would argue that

the defendant's motion for continuance should have been granted. We he

presented the oral motion to continue he indicated to your Honor it was

because of the defendant's recognition of a new witness. Your Honor

17

replied that the court has a policy of when a complaining witness is here

that there will be no continuance.  No other continuance had been

requested and I recognized that I needed a witness there in my behalf,

Detective Grossman had stated during the time I was bonded out of

the Sauk Village Police Station, I asked if Danielle would be there as a

witness and he told me yes.  When the Court denied our continuance, he

told Attorney that he would give me time to run out and see if I could find

my witnesses and bring them back for trial before court was over.  I did try

to find a witness, one of my witnesses was suppose to be Danielle, so I ran

out to see if I could catch up with my girlfriend, but it was to late to notify

her as she had to work that day and was on her way to work at that time.

I return to Court and told my Attorney that I could not get anyone with

such a late notice.  I did not receive Due Process during this trial because

I should have had time to notify my witness by mail, making a request for

their presents.  I did not receive Due Process because I was convicted on

word of just one complaining witness.  There were no Constitution protect

given to me in a Court of Law.  No human should loose their freedom or

life based only on the work of one person.  I do deny that this incident

ever took place, I know that I have had some problems with the law in the

pass, but I admitted to my guilt and did my time.

If I had committed such a crime, I would have plea guilty for a lesser

charge, but when you are innocent, why should I plea to such a crime.

I do whole heartily agree with the Illinois Courts of Appeals, that one person can be a credible witness, if there are some type of evidence to support, DNA, bruises, letters, recordings or something.  As a matter of public policy and interest, this United States Courts of Appeals, Northern District of Illinois should consider this matter before them at this time in the name of Justice for all Americans.

## CONCLUSION

The petition for a writ of certiorari should be granted.

Respectfully submitted,

Kraig Wilson

*Kraig Wilson*

Date: 9-3-08

*Sallie Spratt*
9-3-08

"OFFICIAL SEAL"
SALLIE SPRATT
Notary Public. State of Illinois
My Commission Expires March 27, 2010